MAIN, Justice.
Pennsylvania National Mutual Casualty Insurance Company (“Penn National”) brought this action against Roger D. Allen, Homeland Vinyl Products, Inc. (“Homeland Vinyl”), and Deric Miner, individually and as the personal representative of the estate of Jane Miner, in the Jefferson Circuit Court seeking a judgment declaring that it owed no duty of defense or indemnity to Allen for claims arising out of a fatal automobile accident that occurred in New Jersey. Allen, a New Jersey resident, moved the trial court to dismiss the claims against him for lack of personal jurisdiction. In response, the trial court dismissed the case in its entirety. Penn National appeals; we affirm.
I. Facts and Procedural History
On April 9, 2010, Allen and his girlfriend, Jane Miner, were involved in an automobile accident in Trenton, New Jersey. The couple was returning to their home in Trenton from a pleasure trip to Atlantic City, New Jersey. Allen was driving the vehicle at the time of the accident, although the vehicle was a company car issued to Miner by her employer. He claimed something crossed the interstate in front of him; he swerved to avoid the object but lost control of the vehicle. The vehicle left the roadway and overturned. Miner died as a result of the accident.
Both Allen and Miner were residents of Trenton, New Jersey. Miner had moved from Alabama to New Jersey approximately nine months before the accident. At the time she moved to New Jersey, Miner was employed as a sales representative for Homeland Vinyl, an Alabama corporation headquartered in Birmingham. Miner continued to work for Homeland Vinyl following her move to New Jersey. Homeland Vinyl provided Miner with a company car, the vehicle involved in the April 2010 accident. At the time of the *786 accident, the vehicle was registered in Alabama and bore an Alabama license plate. The vehicle, however, had been garaged in New Jersey for the nine months following Miner’s move to New Jersey., The vehicle was insured by Penn National through a business automobile-liability policy issued to Homeland Vinyl.
On April 5, 2012, Miner’s son, Deric Miner, individually and as personal representative of Miner’s estate, filed a wrongful-death action against Allen in the Superior Court of New Jersey. The action alleged that Allen had operated the vehicle in a negligent or reckless manner and that his negligence or recklessness had caused the accident. When served with the New Jersey wrongful-death action, Allen notified his personal automobile-liability insurance carrier, Allstate Insurance Company (“Allstate”). According to Allen, Allstate informed Allen that “they would take care of it.”
Initially, rather than obtain counsel to represent Allen in the wrongful-death action, Allstate tendered Allen’s defense to Penn National. We note that Penn National is a Pennsylvania corporation with its principal place of business in Pennsylvania. On May 9, 2012, an Allstate claims representative sent the following correspondence to Penn National at its address in Harrisburg, Pennsylvania:
“Allstate NJ Insurance Company is the personal automobile insurance carrier for Roger D. Allen who was the permissive driver of a vehicle owned by Homeland Vinyl Products and reportedly insured by Penn National Insurance.
“Our insured has been served with the enclosed lawsuit by the attorney representing the Estate of Jane Miner relative to the above captioned matter.
“As the primary insurance carrier for coverage in this matter, kindly assign the lawsuit to counsel to provide a defense of Roger D. Allen.
‘Tour prompt response and attention to this matter is appreciated.”
On August 15, 2012, Penn National filed this declaratory-judgment action in the Jefferson Circuit Court seeking a judgment declaring that it owed no duty to defend or to indemnify Allen in the New Jersey wrongful-death action. Specifically, the complaint asserted that Homeland Vinyl’s guidelines with regard to the use of its company vehicles authorized only Miner to drive the vehicle and expressly prohibited use of the vehicle by any other person.[1] Penn National further asserted that, because Allen was not authorized to operate the vehicle, he did not qualify as a permissive user entitled to coverage under the Penn National policy issued to Homeland Vinyl. Penn National named Allen, Homeland Vinyl, and Deric Miner, individually and as the personal representative of Miner’s estate, as defendants to its declaratory-judgment action. Of the parties, only Homeland Vinyl is an Alabama resident.
On February 26, 2013, Allen filed a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss Penn National’s action against him on the ground that the Jefferson Circuit Court lacked personal jurisdiction over him. In support of his motion, Allen submitted affidavits evidencing his lack of contacts with Alabama. According to Allen’s affidavit, he owns no real or personal property in Alabama; he does not work in Alabama; he does not pay taxes in Alabama; he has not entered into any contracts in Alabama; he conducts no business in Alabama; and he generally denied that he had any con *787 tacts with Alabama. To the contrary, he attested, he is a long-time citizen of New Jersey who lives, works, and pays taxes in New Jersey. Allen testified that Miner’s company vehicle had been garaged in New Jersey continuously since Miner’s move to New Jersey. He further attested that the accident made the basis of this action occurred in New Jersey and that the underlying wrongful-death action is pending in New Jersey.
Penn National opposed Allen’s motion to dismiss. It argued that the Jefferson Circuit Court held specific personal jurisdiction over Allen because, at the time of the accident, he was operating a vehicle registered in Alabama and because, following the filing of the underlying wrongful-death action, his insurance company demanded coverage on his behalf under the Penn National policy — a policy that had been issued for delivery in Alabama to an Alabama-based named insured corporation.[2]
The trial court initially denied Allen’s motion to dismiss. Allen moved the trial court to reconsider its ruling. Following additional briefing by Allen and Penn National and oral arguments, the trial court vacated its previous order and dismissed Penn National’s declaratory-judgment action without prejudice as to all the defendants.[3] This appeal followed.
II. Standard of Review
A Rule 12(b)(2), Ala. R. Civ. P., motion tests the court’s exercise of personal jurisdiction over a defendant. “ ‘An appellate court considers de novo a trial court’s judgment on a party’s motion to dismiss for lack of personal jurisdiction.’ ” Ex parte Lagrone, 839 So.2d 620, 623 (Ala.2002) (quoting Elliott v. Van Kleef 830 So.2d 726, 729 (Ala.2002)). But see Allsopp v. Bolding, 86 So.3d 952, 957-58 (Ala.2011) (recognizing that deference is due to pertinent trial court factual findings to the extent those findings are based on ore tenus evidence).
Additionally, the appropriate analysis and the parties’ respective burdens in a case testing personal jurisdiction are well settled. “ ‘ “The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant.” ’ ” Ex parte McNeese Title, LLC, 82 So.3d 670, 674 (Ala.2011) (quoting Ex parte Excelsior Fin., Inc., 42 So.3d 96, 103 (Ala.2010), quoting in turn J.C. Duke & Assocs. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala.2008), citing in turn Ex parte Covington Pike Dodge, Inc., 904 So.2d 226 (Ala.2004)).
“ ‘ “ ‘In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and “where the plaintiffs complaint and the defendant’s affidavits conflict, the ... *788 court must construe all reasonable inferences in favor of the plaintiff.” Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).’ ”
“ ‘Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, “the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.” Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) (“When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.”) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).’
“Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004).”
Ex parte Excelsior Fin., Inc., 42 So.3d at 103 (emphasis omitted).
III. Analysis
Penn National contends that the trial court erred when it dismissed the claims against AJlen on a personal-jurisdiction ground. Penn National argues the Jefferson Circuit Court properly had specific personal jurisdiction over Allen because at the time of the accident: (1) Allen was operating a vehicle registered in Alabama and owned by an Alabama corporation, Homeland Vinyl, and (2) Allen, or someone acting on his behalf, sought insurance coverage under the automobile-liability policy Penn National had issued to Homeland Vinyl. We must decide whether these “contacts” with Alabama are sufficient to permit this state to constitutionally exercise personal jurisdiction over Allen.
We have previously summarized an Alabama court’s ability to exercise personal jurisdiction over a foreign defendant as follows:
“The extent of an Alabama court’s personal jurisdiction over a person or corporation is governed by Rule 4.2, Ala. R. Civ. P., Alabama’s ‘long-arm rule,’ bounded by the limits of due process under the federal and state constitutions. Sieber v. Campbell, 810 So.2d 641 (Ala.2001). Rule 4.2(b), as amended in 2004, states:
“ ‘(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ’
“In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama’s long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. Duke v. Young, 496 So.2d 37 (Ala.1986); DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447 (Ala.1977). As this Court reiterated in Ex parte McInnis, 820 So.2d 795, 802 (Ala.2001) (quoting Sudduth v. *789 Howard, 646 So.2d 664, 667 (Ala.1994)), and even more recently in Hiller Investments Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006): ‘Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions.’ (Emphasis added.)”
Ex parte DBI, Inc., 28 So.3d 635, 643 (Ala.2009). See also Ex parte McNeese Title, 82 So.3d at 673.
“ ‘Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction, consist of the defendant’s contacts with the forum state that are unrelated to the cause of action and that are both “continuous and systematic.” Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist of the defendant’s contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.’
“Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist ‘a clear, firm nexus between the acts of the defendant and the consequences complained of.’ Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).
“In the case of either general in per-sonam jurisdiction or specific in person-am jurisdiction, ‘[t]he “substantial connection” between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.’ Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of ‘ “the unilateral activity of another person or a third person.” ’ Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417,104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
“Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors — such as the burden on the defendant of litigating in the forum state and the forum state’s interest in adjudi-eating the dispute, Burger King, 471 U.S. at 476-77,105 S.Ct. 2174 — to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with ‘ “traditional notions of fair play and substantial justice.’” Brooks v. Inlow, 453 So.2d 349, 351 (Ala.1984), quoting International Shoe [Co. v. Washington ], 326 U.S. [310,] at 316, 66 S.Ct. 154 [ (1945) ]. See also Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174.”
Elliott v. Van Kleef, 830 So.2d 726, 730-31 (Ala.2002).
A defendant is constitutionally amenable to specific jurisdiction in a forum if the defendant possesses sufficient minimum contacts with the forum to satisfy due-process requirements and if the exercise of jurisdiction by the forum comports *790 with “ ‘traditional notions of fair play and substantial justice.’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). See Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 972 (Ala.2011) (quoting Ex parte McInnis, 820 So.2d 795, 802-03 (2001)). This two-part test embodies the controlling due-process principle that a defendant must have “fair warning” that a particular activity might subject it to the jurisdiction of a foreign sovereign. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). See Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d at 970.
In the present case, Penn National concedes that Allen lacks the “continuous and systematic” contacts with Alabama sufficient to confer general personal jurisdiction over Allen. Rather, it contends that trial court may exercise specific personal jurisdiction based on the following contacts: (1) at the time of the accident Allen was driving a car registered in Alabama; (2) the car was owned by an Alabama company; (3) the insurance policy covering the vehicle was issued to an Alabama named insured and was delivered to that insured in Alabama; and (4) Allen has made a claim for coverage under that “Alabama” policy.
We have recently summarized the test for determining whether sufficient minimum contacts exist for the purpose of exercising specific personal jurisdiction:
“Over the course of the development of minimum-contact analysis following International Shoe Co. and its progeny, this Court, in Elliott v. Van Kleef, supra, and its progeny, has essentially formulated a test for ascertaining whether there are sufficient minimum contacts for a court to exercise specific personal jurisdiction over a nonresident defendant: (1) The nonresident defendant’s contacts must be related to the plaintiffs cause of action or have given rise to it. Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d at 971 (citing Burger King Corp. v. Rudzewicz, 471 U.S. at 472). (2) By its contacts the nonresident defendant must have purposefully availed itself of the privilege of conducting business in the forum state. Ex parte City Boy’s Tire & Brake, Inc., 87 So.3d 521, 529 (Ala.2011). See Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King, 471 U.S. at 474-75. (3) The nonresident defendant’s contacts with the forum must be ‘such that the nonresident defendant “ ‘should reasonably anticipate being haled into court’ ” in the forum state.’ Ex parte Excelsior Fin., Inc., 42 So.3d at 101 (quoting Burger King Corp., 471 U.S. at 473, quoting in turn World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)). See, e.g., Elliott v. Van Kleef, supra.”
Ex parte Alamo Title Co., 128 So.3d 700, 711 (Ala.2013) (footnote omitted).
First we note that the connections between Penn National’s declaratory-judgment action and Allen’s supposed contacts with Alabama are tenuous. In its action, Penn National seeks a judgment declaring its coverage obligations related to another lawsuit pending in the Superior Court of New Jersey arising from an automobile accident that occurred in New Jersey, involving New Jersey residents. The only real connection between this action and Alabama appears to be the fact that Penn National’s named insured is located in Alabama, where the insurance policy was delivered. This contact, however, cannot be attributed to any purposeful action by Allen.
*791 Indeed, there is no indication that Allen “purposely availed” himself of the protection of Alabama’s laws. Allen has had no direct connection to Alabama — there is no evidence indicating that he entered into any contracts in Alabama, that he committed any tortious conduct in Alabama, or that he directed any conduct or communication toward Alabama. At best, Allen’s contact with Alabama was indirect — at the time of the accident he was driving a car owned by an Alabama company and registered in Alabama. Although this car bore an Alabama license plate, it was a company car issued to Miner, who had kept the vehicle in New Jersey for nine months preceding the accident. It cannot be said that an isolated intrastate use of this vehicle in New Jersey by Allen was a purposeful availment by Allen of Alabama’s laws or that such use should have caused Allen to reasonably expect to be haled into the Jefferson Circuit Court.
Nor can we conclude that Allen’s request for a defense in the New Jersey wrongful-death action was “purposeful” in the jurisdictional sense. Penn National argues that because the policy under which he was requesting the defense was issued in Alabama, it will be governed by Alabama law. Thus, Penn National contends that when Allen demanded a defense under this “Alabama” policy, he purposefully availed himself of the protection of Alabama’s laws. This argument confuses choice-of-law issues with jurisdictional analysis. In fact, Alabama law might not apply if the case was filed in a jurisdiction applying different choice-of-law rules. See Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass’n Ins. Co., 134 N.J. 96, 102, 629 A.2d 885, 888 (1993) (rejecting the lex loci contractus rule in favor of a “most significant connections” approach).
Furthermore, Allen argues that he never even requested a defense from Penn National; he merely forwarded the complaint in the underlying New Jersey wrongful-death action to his insurer, Allstate. Allstate’s New Jersey claims office then tendered Allen’s defense request to Penn National’s Pennsylvania home office. Even if Allstate’s defense tender is attributed directly to Allen, however, there is no evidence indicating that this claim for coverage involved any communication or affirmative act directed at Alabama. Rather, the claim was made directly to Penn National’s Pennsylvania office. Although the insurance contract was formed in Alabama, under these particular circumstances, we do not find that Allen’s request for a defense in the New Jersey wrongful-death action evidences purposeful availment. Accordingly, we hold that Allen’s demand for a defense from Penn National in the underlying New Jersey wrongful-death action does not give rise to specific personal jurisdiction in Alabama. See Hartford Cas. Ins. Co. v. JR Marketing, LLC, 511 F.Supp.2d 644, 650 (E.D.Va.2007) (holding that a request for defense did not constitute purposeful conduct toward the forum state).
Allen’s contacts with Alabama were no more than indirect and tangential, and the “ ‘nature and quality and the circumstances of their commission’ create only an ‘attenuated’ affiliation with the forum.” Burger King Corp., 471 U.S. at 476 n. 18 (quoting International Shoe, 326 U.S. at 318). Accordingly, we conclude that Allen’s contacts with Alabama do not support a finding of purposeful activity invoking the benefits and protections of Alabama law. Based on our analysis of the specific-personal-jurisdiction-minimum-contacts factors and the record before us, we conclude that the trial court correctly dismissed the claims against Allen for lack of personal jurisdiction.
*792 IV. Conclusion
Based on the above, we affirm the trial court’s order dismissing Penn National’s declaratory-judgment action.
AFFIRMED.
MOORE, C.J., and BOLIN, MURDOCK, and BRYAN, JJ., concur.

. The allegedly applicable guideline provided: “Only those employees that have been specifically authorized are allowed to drive Company vehicles. No member of an employee's family is authorized to drive a company vehicle under any circumstance.”

. After the filing of Penn National’s declaratory-judgment action, Allen filed a third-party complaint in the underlying New Jersey wrongful-death action, seeking a declaration that Penn National, in fact, owes him defense and indemnity for claims arising from the accident.

. Although Allen's Rule 12(b)(2), Ala. R. Civ. P., motion sought dismissal of only the claims against him, the trial court dismissed Penn National's declaratory-judgment action in its entirety. Whether the trial court properly dismissed the case in its entirety, or whether the trial court should have limited its dismissal to only the claims against Allen, is not an issue raised or addressed by the parties on appeal. Accordingly, that issue is not before us. The only appellee's brief filed on appeal is Allen's.