WOODALL, Justice.
McNeese Title, LLC, a Florida limited liability company owned and operated by Richard McNeese, and Richard McNeese (hereinafter referred to collectively as “McNeese”), and Peggy S. Owens petition this Court for a writ of mandamus, direct *672 ing the Mobile Circuit Court to vacate its order denying the motions of McNeese and Owens to dismiss the action filed against them by Mobile County resident James E. Atchison and to enter an order dismissing the action for lack of in person-am jurisdiction. We grant the petition and issue the writ.

I. Factual and Procedural Background

This dispute arose out of Atchison’s purchase of two residential lots in the Villa Lago subdivision (“the subdivision”), which was originally a 14-acre tract of land in the Golf and Beach Resort of Sandestin, Florida. On September 29, 2005, Atchison signed two documents entitled “Sandestin Villa Lago Subdivision Home Purchase and Sale Agreement” (“the agreements”) for the purchase of two lots, namely, lots 61 and 81. Each of the agreements required Atchison to pay to McNeese Title a “non-refundable deposit” of $15,000. The seller was identified as C-D Jones & Company, Inc. (“C-D Jones”), of Destín, Florida. The agreements stated, in pertinent part:
“3. Payment of Purchase Price. The purchase price specified above shall be paid as follows:
“(a) Deposit. Upon complete execution of this Agreement, [Atchison] shall deposit with Seller’s escrow agent, McNeese Title, LLC, whose address is ... Destín, Florida ... (the ‘Agent’), that Deposit described above to be held until closing in a federally insured non-interest bearing account until closing.
“(b) Remainder. The remaining Purchase Price for the Lot along with [Atchison’s] closing costs shall be paid by cashier’s check or wire transfer of funds to Seller at the Closing described here.
“4. Closing. The closing of the Lot (the ‘Closing’) shall be held at the office of [McNeese Title], on such a date as the parties may hereafter agree, but in no event later than the Closing Date described above (unless extended pursuant to Paragraph 26 hereof), time being of the essence of this Agreement....
“26. Contingencies to Close. This contract and the obligations of the parties herein are specifically contingent upon the following:
“(b) The successful closing of all Lots within the subdivision on or before the Closing Date. In the event the closings of all Lots do not occur on or before the Closing Date, the Closing Date may be extended, at the option of Seller, for a period not to exceed sixty (60) days.”
(Emphasis added.)
According to Atchison, these agreements were sent to him by the “developers,” who, he says, “developed, marketed and sold the lots” in the subdivision. Atchison’s brief, at 4. He identifies those developers as CD Jones and 331 Partners, LLC.[1] In that connection, Atchison also signed a “compliance agreement limited power of attorney,” designating Richard McNeese or Owens as Atchison’s “attorney in fact for [his] use and benefit, ... for the purpose of ... signing or initialing on [his] behalf, any and all documents affecting the closing or refinance of the [lots].” The closing was held on November 3, 2005, at which time Atchison allegedly paid McNeese “no less than $683,589.” At that time, howev *673 er, many of the other lots in the subdivision had not closed, contrary to ¶ 26(b) of the agreements.
Eventually, Atchison sued a number of individuals and entities, including C-D Jones, 331 Partners, McNeese, and Owens, alleging that he had suffered damage as a result of activities conducted by C-D Jones and 331 Partners after the closing. Essentially, the counts against McNeese and Owens[2] averred that McNeese knowingly misrepresented to Atchison just prior to closing that all the lots in the subdivision had sold and would close by the closing date for his lots as required by ¶ 26(b) of the agreements; that McNeese nevertheless accepted Atchison’s payments on the date of closing and paid the amount over to the developers without ensuring compliance with ¶ 26(b) of the agreements, thus resulting in damage to Atchison because of the post-closing activities of C-D Jones and 331 Partners.
McNeese and Owens moved to dismiss the action for lack of personal jurisdiction. See Rule 12(b)(2), Ala. R. Civ. P. Their motions were accompanied by affidavits addressing the limited extent of their contacts with Alabama. The trial court denied the motions to dismiss; this mandamus petition followed.

II. Discussion

“[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.” Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003). “A petitioner may be entitled to a writ of mandamus in such a case upon a showing of a clear legal right to an order dismissing the action against it.” Ex parte First Western Bank, 898 So.2d 701, 704 (Ala.2004). “ ‘The burden of establishing a clear legal right to the relief sought rests with the petitioner.’ ” Ex parte Dangerfield, 49 So.3d 675, 680 (Ala.2010) (quoting Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala.2007)).
Jurisdiction over out-of-state defendants is acquired pursuant to Rule 4.2(b), Ala. R. Civ. P., which provides, in pertinent part:
“An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States.... ”
In other words, “[t]his rule extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions.” Hiller Invs., Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala.2006). Under this rule, the exercise of jurisdiction is appropriate so long as the out-of-state defendant has “ ‘some minimum contacts with this state [so that] ... it is fair and reasonable to require the person to come to this state to defend an action.’ ” Dillon Equities v. Palmer & Cay, Inc., 501 So.2d 459, 461 (Ala.1986) (quoting former Rule 4.2(a)(2)(I), Ala. R. Civ. P.).
According to McNeese and Owens, At-chison has failed to show that jurisdiction over them is proper in this case. Specifically, they argue:
“[I]n this case, [Atchison’s] Complaint and Amended Complaint are completely devoid of any factual allegations that would establish personal jurisdiction over the [Petitioners]. Instead, the Complaint and Amended Complaint contain only generic allegations that the *674 Petitioners are subject to personal jurisdiction in Alabama, with no supporting factual allegations. Indeed, the Complaint and Amended Complaint contain no factual allegations whatsoever as to any contacts between the Petitioners and the State of Alabama. Based on this fact alone, Petitioners believe [At-chison’s] claims against them are due to be dismissed for want of personal jurisdiction, regardless of any other eviden-tiary submissions.”
Petition, at 9. We agree.
“This Court has explained the appropriate analysis and the parties’ respective burdens on a personal-jurisdiction issue as follows. ‘The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant. Ex parte Covington Pike Dodge, Inc., 904 So.2d 226 (Ala.2004).’ J.C. Duke & Assocs. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala.2008).
“ ‘ “ ‘In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff’s complaint not controverted by the defendant’s affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and “where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.” Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)).’ ”
“‘Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, “the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.” Mercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala.2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) (“When a defendant files a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.”) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).’
“Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004) (emphasis added; footnote omitted).”
Ex parte Excelsior Fin., Inc., 42 So.3d 96, 103 (Ala.2010).
However, when the complaint fails to allege any jurisdictional basis, “there is nothing in the complaint ... that the court must consider as true and that therefore places [any] burden on [the defendant] to controvert by affidavit.” Excelsior, 42 So.3d at 104 (defendant need not present evidence of absence of jurisdiction when the complaint contains no jurisdictional averments).
Atchison does not direct us to any paragraphs of the complaint, as amended, that he contends specifically allege jurisdiction. However, according to Atchison, his complaint alleged that “the McNeese defen *675 dants were agents, representatives and co-conspirators of the developers and marketers associated with the development and sale of [the subdivision].” Atchison’s brief, at 11 (citing ¶¶ 39, 40, 42, 57-60, and 61-82 of his complaint).
Although it is true that personal jurisdiction may, in some cases, be obtained by “imputing conduct to an alleged coconspirator who has personally performed no overt act in Alabama,” Ex parte Reindel, 963 So.2d 614, 624 (Ala.2007), “it is well established in Alabama that a plaintiff cannot establish personal jurisdiction under a conspiracy theory unless the plaintiff ‘plead[s] with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.’ ” Matthews v. Brookstone Stores, Inc., 469 F.Supp.2d 1056, 1066 (S.D.Ala.2007) (quoting Ex parte McInnis, 820 So.2d 795, 806-07 (Ala.2001)). See also Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459 (Ala.2003) (plaintiff is not entitled to discovery on jurisdictional issue where the complaint does not “‘at least allege facts that would support a colorable claim of jurisdiction.’ ” (quoting Schenck v. Walt Disney Co., 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990))).
In that connection, Atchison’s first amended complaint avers, in pertinent part:
“39. On November 3, 2005, after McNeese Title, McNeese and Owens, actually and/or constructively received Atchison’s money, to-wit no less than $683,589, C-D Jones and 331 Partners engaged in a collusive transaction whereby 331 Partners purported to sell lots in Villa Lago Subdivision, including Lots 61 and 81, to C-D Jones in exchange for the money previously transferred by Atchison and the other buyers of Villa Lago lots, (hereinafter referred to as the ‘331/C-D Jones Land Transfer’).
“40. At the time of the 331/C-D Jones Land Transfer, 331 Partners and C-D Jones were partners, joint ventur-ers and co-conspirators in a fraudulent scheme to sell the lots to Atchison and other similarly situated buyers under circumstances constituting a fraudulent transfer under the Uniform Fraudulent Transfers Act.
“42. The transfer made through the 331/C-D Jones Land Transfer was done with knowledge and/or participation by Defendants ... McNeese Title, McNeese and Owens, and with the actual intent to hinder, delay or defraud Atchison, who was then or subsequently became a Creditor of Debtors 331 Partners, C-D Jones and/or McNeese Title.
“57. The transfer of assets from C-D Jones to Defendant McNeese Title was done with knowledge and/or participation by Defendant McNeese Title and with actual intent to hinder, delay or defraud Atchison, who was then or subsequently became a Creditor of C-D Jones.
“58. After McNeese Title received the assets of C-D Jones and/or Atchi-son, McNeese and/or Owens received all or part of said assets without payment of reasonably equivalent value through dividends and/or distributions from McNeese Title.
“59. In the case of each distribution by McNeese Title to Defendant McNeese and/or Owens the dividend(s) or distribution(s) were done under circumstances constituting a fraudulent transfer under the Uniform Fraudulent Transfers Act.
“60. At the time of each distribution by McNeese Title to McNeese and/or *676 Owens, said Defendant(s) was an Insider of McNeese Title and the dividend(s) or distribution(s) which was received by-said Defendant(s) was made and accepted under circumstances constituting a fraudulent transfer under the Uniform Fraudulent Transfers Act.”
(Emphasis added.)
These paragraphs contain no jurisdictional averments. To be sure, ¶ 40 does use the terms “partners,” “joint ventur-ers,” and “co-conspirators.” However, the allegations in these paragraphs are directed solely to the merits of the claims against C-D Jones and 331 Partners, that is, they do not purport to identify a basis for jurisdiction. In other words, they allege no “ ‘overt acts within the forum taken in furtherance of the conspiracy.’ ” Matthews v. Brookstone Stores, Inc., 469 F.Supp.2d at 1066 (quoting Ex parte McInnis, 820 So.2d at 806-07 (emphasis added)).
Moreover, ¶ 40 fails even to mention McNeese. Indeed, Atchison states in his brief in support of the petition: “Because this Petition involves only the challenge to jurisdiction filed by McNeese Title, LLC, Richard McNeese and Peggy Owens, ... discussion will be limited to their involvement in the sale of the lots with references to other parties only as needed.” Atchi-son’s brief, at 2 n. 1. However, without integrating the specific activities of McNeese and Owens with those of the entities of which they are alleged to be agents or coconspirators, it is difficult — if not impossible — to impute the conduct of such others to McNeese and Owens. Thus, the complaint contains no specific averments of conspiracy or agency.
Similarly, although it mentions McNeese in passing, ¶ 39 is devoted to allegations concerning C-D Jones and 331 Partners. The allegations are directed entirely to the merits of the claims against those defendants and do not purport to reveal how the selling of the lots in the subdivision, which is located in Florida, might form a basis for jurisdiction in Alabama over any defendant.
Paragraphs 42 and 57 aver in virtually identical terms that Richard McNeese or McNeese Title knew about, and participated in, the alleged sales of lots/transfer of assets in order to “defraud Atchison.” They do not allege that such sales or transfer — or any other relevant activity— occurred in Alabama. The averments in ¶¶ 58-60 are similarly restricted to the merits of the case, that is, they merely allege that distributions were made from McNeese Title to Richard McNeese and/or Owens “under circumstances constituting a fraudulent transfer under the Uniform Fraudulent Transfers Act.” Thus, they are irrelevant for jurisdictional purposes.
Paragraphs 61-82 of the complaint, which are not quoted above, are as juris-dictionally insignificant as the paragraphs just discussed. Paragraphs 69-71 aver that Richard McNeese made certain misrepresentations to Atchison but fail to disclose the mode or location of those conversations. Likewise, ¶¶ 72-73 aver that Atchison executed a power of attorney in favor of McNeese but allege no specifics regarding the location or manner of that transaction. In essence, ¶¶ 61-82 merely purport to describe the manner in which McNeese allegedly breached “contractual obligations” to Atchison. Conspicuously absent are references to the situs of any relevant conduct of McNeese or to the identity of the party initiating the transactions. Such factors would be material for jurisdictional purposes, as this Court has noted. See, e.g., Hiller Invs., Inc. v. Insultech Group, Inc., 957 So.2d at 1119 (the first-contact factor is “highly significant”); Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1265 (Ala.1998) (jurisdiction *677 was proper where the foreign defendant initiated the business contact with the Alabama resident); and Ex parte Am-South Bank, N.A., 675 So.2d 1305, 1308 (Ala.1996) (discussing Steel Processors, Inc. v. Sue’s Pumps, Inc., Rentals, 622 So.2d 910 (Ala.1993), in which this Court found no personal jurisdiction “where (1) the contractual relationship was initiated by the Alabama plaintiff, (2) ‘the repair project in Florida was developed by an Ohio business; [3] the repairs were made in Florida; and [4] no goods or services went out of Florida’ ”).
In short, Atchison’s first amended complaint failed to allege any basis for the exercise of in personam jurisdiction over McNeese and Owens and, therefore, “place[d] [no] burden on [McNeese and Owens] to controvert [anything] by affidavit.” Ex parte Excelsior, 42 So.3d at 104. Because the first amended complaint contains no factual averments to the effect that McNeese and Owens purposefully directed their activities at Alabama, we need not analyze the evidence they offered in support of their motions. Id. Consequently, McNeese and Owens have demonstrated a clear legal right to an order dismissing the action against them.

III. Conclusion

For the above-stated reasons, we grant the petition and direct the trial court to dismiss the claims against McNeese and Owens based on a lack of in personam jurisdiction.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.

. 331 Partners, LLC, is a Florida limited liability company, having its primary place of business in Mobile.

. According to Atchison, Owens is an officer or employee of McNeese Tide.